United States District Court
Middle District of Florida
Jacksonville Division

**BENJAMIN MCDONALD,**

   **Plaintiff,**

**v.**                                    **NO. 3:20-cv-971-MMH-LLL**

**HUNTER WARFIELD, INC.,**

   **Defendant.**

---

### Report and Recommendation

Before the Court is plaintiff's Motion for Award of Plaintiff's Attorney's Fees and Costs, doc. 32. Defendant filed a response in opposition, doc. 35, and supplemental briefing followed with leave of Court. *See* docs. 38, 39. Plaintiff's motion has been referred for the issuance of a report and recommendation regarding an appropriate resolution.

### Background

In August 2020, defendant filed a Notice of Removal, doc. 1, removing this case that was initiated in state court to federal court. The asserted basis for the Court's subject matter jurisdiction was that the lawsuit involved a federal question under 28 U.S.C. § 1441(a). Plaintiff then filed an amended class action complaint, doc. 6, alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and the Florida Consumer Collection Practices Act (FCCPA), section 559.55, *et seq.*,

Florida Statutes. In the amended class action complaint, plaintiff alleged defendant, a collections agency, improperly furnished information to various credit reporting agencies about a debt that plaintiff purportedly owed stemming from a residential lease agreement. Doc. 6 at 2-6. Plaintiff alleges defendant "knew or should have known that it had no proof of any liquidated amount being owed to [the alleged creditor] and that the alleged debt it was reporting on [plaintiff's] consumer reports was not from a consumer credit transaction at all but was solely related to a residential lease agreement." *Id.* at 3. Plaintiff also alleges defendant obtained plaintiff's consumer credit report with no permissible purpose and improperly added pre-judgment interest to the amount it was seeking from plaintiff. *Id.* at 3-4. Defendant filed an answer, in which it denied that defendant violated the FCRA or FCCPA. Doc. 9 at 1.

In October 2020, plaintiff moved for an extension to file a motion for class certification pursuant to Rule 23, Federal Rules of Civil Procedure (Rules), doc. 13. The Court granted that motion and set the deadline to file a class certification for May 17, 2021. *See* docs. 15, 18. In March 2021, plaintiff filed a motion to compel discovery responses, doc. 19. On April 1, 2021, the Court entered an order taking plaintiff's motion, doc. 19, under advisement and ordered the parties to confer in good faith to resolve the discovery issues. Doc. 20 at 2. Two weeks later, on April 15, 2021, plaintiff filed a Notice of Settlement, doc. 21, indicating his acceptance of an Offer of Judgment pursuant to Rule 68. The Court entered a final judgment on May 13, 2021, ordering defendant pay damages of $8000.00 plus interest to plaintiff pursuant to the accepted Offer of Judgment. Doc. 27. The Court retained jurisdiction on the issue of attorney's

2

fees and costs, specifically noting, "[p]ursuant to the terms of the accepted Offer of Judgment, Benjamin McDonald is entitled to an additional amount for reasonable attorney's fees and taxable costs." *Id.* Plaintiff's motion followed, doc. 32.

### Authority

The parties agree plaintiff is entitled to reasonable attorneys' fees and taxable costs and that the Court properly retained jurisdiction to determine the final amount. *See* docs. 26-1, 29. Moreover, both the FCRA and the FCCPA permit plaintiff to seek reasonable attorney's fees and court costs. 15 U.S.C. § 1681n(a)(3)[1]; § 559.77(2), Fla. Stat. (2020).

What constitutes a reasonable attorneys' fee is a matter within the Court's discretion. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). A prevailing party may only recover an objectively reasonable attorney fee, known as the "lodestar" fee, which is the product of the number of hours reasonably expended on the litigation times the reasonable hourly rates.[2] *Marchisio v. Carrington Mortg. Servs., LLC*, Case No. 14-14011-CIV-Maynard, 2020 WL 4350725, at *6 (S.D. Fla. July 29, 2020) (citing *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427

---

[1] This section allows for, "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3).

[2] In his discussion of the lodestar formula, plaintiff cites the factors in Rule 4-1.5(b), Florida Rules of Professional Conduct, noting those factors were adopted by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424 (1983). Doc. 32 at 6. These factors are not considered individually, however, because they are generally subsumed in the lodestar analysis. *See In re. Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019).

(11th Cir. 1999)).   It is the burden of the party seeking the fees to prove the reasonableness of the hourly rates and the number of hours worked. *Barnes*, 168 F.3d at 427.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates." *Id.* (citation omitted). That evidence "necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* Moreover, "[t]estimony that a given fee is reasonable is therefore unsatisfactory evidence of a market rate. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 439 n. 15 (1983)). Put simply, the object of the lodestar analysis is to calculate "what a reasonable, paying client would be willing to pay." *MWH Constructors, Inc. v. Brown & Brown Elec., Inc.*, Case No.: 17-80902-CIV-Rosenburg/Reinhart, 2018 WL 6807401, at *2 (S. D. Fla. Sept. 6, 2018), *report and recommendation adopted*, 2018 WL 6807317 (S. D. Fla. Sept. 27, 2018). In making this determination, the Court is not required to follow the parties' calculations. Instead, because the court "is itself an expert on the question [of reasonable hourly rates, it] may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment" without the benefit of other witnesses as to the values.  *Norman*, 836 F.2d at 1303 (quotation and citations omitted).

Regarding the second prong—the number of hours reasonably expended—
"excessive, redundant, or otherwise unnecessary hours should be excluded from the
amount claimed." *Id.* at 1301 (quoting *Hensley*, 461 U.S. at 434) (internal quotation
omitted). The fee movant must show good billing judgment and the prevailing party's
attorneys should submit to the losing party the same bill that the attorneys would
expect their own client to pay. *Marchisio*, 2020 WL 4350725, at *6. "In making
adjustments to the hours claimed, the district court is charged with deducting for
redundant hours." *Norman*, 836 F.3d at 1301. "Redundant hours generally occur
where more than one attorney represents a client." *Id.* at 1301-02. However, "[t]here
is nothing inherently unreasonable about a client having multiple attorneys, and they
may all be compensated if they are not unreasonably doing the same work and are
being compensated for the distinct contribution of each lawyer." *Id.* at 1302.

Although "[c]ourts are not authorized to be generous with the money of others,
and it is as much the duty of courts to see that excessive fees and expenses are not
awarded as it is to see that an adequate amount is awarded," *Barnes*, 168 F.3d at 428,
"trial courts need not, and indeed should not, become green-eyeshade accountants.
The essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox v.
Vice*, 563 U.S. 826, 838 (2011). Once the lodestar has been calculated, there is a
presumption that it represents a reasonable fee; however, it can be adjusted up or down
based on other considerations. *Walker v. Iron Sushi, LLC*, 752 F. App'x 910, 913 (11th
Cir. 2018) (per curiam). "There is no precise rule or formula for making these
determinations," *Hensley*, 461 U.S. at 436, and on appeal the trial court's decision

5

regarding fees will be upheld absent an abuse of discretion. *See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006).

## Analysis

### I.   Attorney's Fees

#### a.   Reasonable Hourly Rate

There is no dispute that plaintiff, as the successful party, is entitled to a reasonable award of attorney's fees. 28 U.S.C. § 1681n(a)(3). What constitutes a reasonable fee, however, is within the Court's sound discretion. *Norman*, 836 F.2d at 1304. A reasonable hourly rate is typically defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes,* 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). The relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed, which in this case would be the Jacksonville Division of the Middle District of Florida. *Id.* at 437. If the movant wishes to recover non-local rates of an attorney who is not from the place where the case is filed, he must show a lack of practicing attorneys in that place who are willing and able to handle his claims. *Id.*

Plaintiff requests hourly rates as follows: (1) $700.00 for attorney Rothburd; (2) $475.00 for attorney Thoresen; (3) $450.00 for attorney Pycraft; (4) $150.00 for paralegals Ropp and Larue; (5) $125.00 for paralegal Erdelyi; and (6) $150.00 for law clerk Thatcher. Doc. 32 at 3-4. In support, plaintiff's attorneys claim they obtained an excellent monetary recovery for their client, significantly higher than the $1000 cap

6

applicable to claims under the FCRA and FCCPA for individuals. *Id.* at 12. Plaintiff also claims the area of law is sufficiently specialized that the Court should consider a national market, citing an "attorney search" feature on a website entitled the National Association of Consumer Advocates, which lists only 8 attorneys in the local area who list "credit reporting" as a practice area. *Id.* at 13-14. Plaintiff also provides an affidavit from its expert, Michael G. Tanner, in support of its motion. *See* doc. 32-4.

In the alternative, Defendant argues plaintiff's requested rates are excessive given the simplistic nature of the case. Doc. 35 at 5. Defendant cites several cases to support the proposition that courts in the relevant legal community have found rates of $100.00 to $350.00 per hour to be reasonable for attorneys and $95.00 to $100.00 to be reasonable for paralegals in similar cases. *Id.* Defendant provides an affidavit from its own fee expert, Ernest H. Kohlmeyer, III, *see* doc. 35-1, in which Mr. Kohlmeyer opines that reasonable rates in this case should not exceed $350.00 for Mr. Rothburd and $300.00 for Mr. Thoresen and Mr. Pycraft. *Id.* at 11-12. Defendant asserts the cases cited by plaintiff's expert, Mr. Tanner, are distinguishable, involving class certifications, fully briefed motions for class certification, or settlements on a class-wide basis. Doc. 35 at 8-9. Defendant relies on the fact that this case, although filed as a class action, involved no class certification, and was not litigated as a class action. *Id.* at 9.  Rather, defendant points out, this case was settled early and on an individual basis. *Id*. Finally, defendant asserts the Court should not rely on the nation-wide surveys provided by plaintiff in support of the assertion that rates beyond those of the Jacksonville Division should be considered, citing several cases in support. *Id.* at 9-12.

Based on my review of the parties' motions, what was litigated in this case, and the settlement agreement, I find that plaintiff's timekeepers' rates require reduction. Plaintiff relies heavily on *Sos v. State Farm Mut. Ins. Co.*, 2021 WL 1186811, Case No. 6:17-cv-890-PGB-LRH, 2021 WL 1186811 (M.D. Fla. Mar. 19, 2021) to support the requested rates. In that case, the court approved a rate of $800 for lead counsel and $458.00 for supporting counsel. *Id.* at *8. *Sos* was heavily litigated, however, and the court specifically noted that "[m]ultiple rounds of class certification briefing and summary judgment briefing, as well as extensive class, fact, and expert discovery, was necessary, and a skilled set of litigators was required." *Id.* at *4. Plaintiff also relies on *Williams v. New Penn Financial, LLC*, Case No. 3:17-cv-570-J-25JRK, 2019 WL 2526717 (M.D. Fla. May 8, 2019), another case involving a settlement in which a class was certified. *Id.* at *1.

The cases cited by plaintiff are distinguishable because they involved extensive litigation and motion practice. Here, the case was settled relatively early after filing and involved minimal discovery. Moreover, despite being initially filed as a class action, the case was settled on an individual basis and there was no motion for class certification or subsequent litigation on that issue. *See* doc. 27. Similarly, the cases cited by plaintiff's expert in support of its requested fees are distinguishable on the same grounds. *See* doc. 32-4 at 12-13.

I am similarly unpersuaded by plaintiff's reliance on various surveys, including the National Law Journal Billing Survey, Law360, and the Laffey Matrix because they do not represent rates that courts have found to be reasonable in the relevant area. *See*

8

doc. 32 at 15; *Alston v. Summit Receivables*, Case No: 6:17-cv-1723-Orl-31DCI, 2018
WL 3448595, at *10 (M.D. Fla. June 27, 2018), *report and recommendation adopted*, 2018
WL 3436789 (M.D. Fla. July 17, 2018) (finding movant's reliance on Consumer Law
Attorney Fee Survey Report in support of requested rates unpersuasive, noting that it
does not appear that the rates contained in the survey represent that courts in a
particular are have found to be reasonable, but, instead, are generated based on
voluntary responses from attorneys in particular geographical areas).

This was a relatively straightforward case involving alleged violations of the
FCRA and FCCPA. Plaintiffs have not provided sufficient evidence for the Court to
conclude that the area of law is so highly specialized that it would necessitate looking
beyond rates typical for these types of case in the Jacksonville Division. The case did
not involve particularly complex or difficult issues and, while counsel has considerable
experience, the case did not require exceptional expertise.

After review, I find an hourly rate of $350.00 to be reasonable for Mr. Rothbard
and $300.00 for Mr. Thoresen and Mr. Pycraft, which is in line with the established
market rate for these types of cases in the Middle District of Florida. *See Alston,* 2018
WL 3448595, at *10 (reviewing cases of FDCA and FCCPA attorney's fees awarded
throughout the District "reveals that courts award between $100.00 and $350.00 per
hour for attorneys and between $95.00 and $100.00 per hour for paralegals." (citations
omitted)); *Frechette v. Nat'l Credit Sys., Inc.*, Case No. 8:19-cv-37-T-23JSS, 2020 WL
7408378, at *4 (M.D. Fla. Mar. 30, 2020), *report and recommendations adopted*, 2020 WL
7408376 (M.D. Fla. July 7, 2020) (finding reasonable hourly rate of $300.00 for

counsel in case involving violations of the FCRA, FCCPA and Fair Debt Collection Practices Act (FDCPA)); *McCray v. Dietsch and Wright, P.A.*, Case No. 8:18-cv-731-T-02SPF, 2020 WL 6565078, at *2 (finding reasonable hourly rates of $350.00 for counsel with 20 years of experience, $300.00 for counsel with ten or less years of experience, and $100.00 per hour for paralegals with less than 25 years of experience in FDCPA case); *Victor v. Petrousky*, Case No. 6:19-cv-788-Orl-40LRH, 2020 WL 7401594, at *7 (M.D. Fla. Nov. 2, 2020), *report and recommendations adopted*, 2020 WL 7401596 (M.D. Fla. Dec. 1, 2020) (finding reasonable hourly rates between $175.00 and $300.00 for counsel and $100.00 for paralegal in case involving violations of the FDCPA and FCCPA). This is based on the relevant background and experience of counsel, the level of skill and complexity required for this case, the facts involved, and the contingent nature of the action. There is no evidence that the case was particularly complicated or that representing the plaintiff precluded these attorneys from accepting other employment while this case was litigated. For the same reasons, I find an hourly rate of $100.00 to be reasonable for the paralegals involved and $95.00 for the law clerk, based upon the relevant market.

**b. Number of Hours**

I must now determine the number of hours reasonably expended on this case. Attorneys must "exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Gladames v. N&D Inv. Corp,* 432 F. App'x 801, 806 (11th Cir. 2011) (per curiam) (internal quotation omitted). A district court may reduce the number of hours by either conducting an hour-by-hour analysis

10

or by applying an across-the-board cut, but not both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).

Plaintiff claims it is entitled to bill for the following hours: (1) 60.6 hours for Mr. Rothburd plus 5.5 hours for law clerk Thatcher; (2) 68.46 hours for Mr. Thoresen plus 30.35 hours for his paralegal; and (3) 34.74 hours for Mr. Pycraft plus 22.45 hours for his paralegal. Doc. 32 at 10-11. In total, plaintiff seeks compensation for 163.8 hours of attorney time, 52.8 hours of paralegal time, and 5.5 hours of law clerk time.

Defendant counters that an across-the-board reduction of at least 40% is warranted due to plaintiff's limited success and the lack of billing judgment to appropriately reduce hours. Doc. 35 at 12. Defendant argues that, although plaintiff obtained a successful judgment, it is significantly less than what plaintiff could have obtained had the case been litigated as a class action under the FCRA. *Id.* at 13-14. Regarding billing judgment, defendant claims plaintiff seeks compensation for time that was spent on administrative, clerical, or secretarial functions, which is improper. *Id.* at 14-16. In support, defendant points to a total of 11.75 hours it claims were spent on tasks such as filing documents, reviewing routine orders and filings, and calendaring matters, and requests that they be deducted from plaintiff's requested hours. *Id.* at 16. Defendant also claims plaintiff billed for an excessive amount of time spent on intraoffice communications, and requests the Court deduct a total of 101.67 hours based on that. *Id.* at 16-18. Finally, defendant asserts the Court should deduct a

11

total of 77.64 hours for what it claims was improper block-billing by plaintiff's counsel. *Id.* at 18-19.

After review, I find that an across-the-board reduction in hours of 35% is appropriate. This case was filed in August 2020 and settled eight months later. A review of the docket shows that in addition to the 2-page complaint, doc. 1, and nine-page amended complaint, doc. 6, the parties only filed one contested discovery motion. Doc. 19.  Although I am aware that this is not a full picture of the work that went into litigating and resolving this case, it is also relevant to calculation of the reasonableness of the number of hours being requested for reimbursement. In arriving at this conclusion, I considered each of defendant's objections as follows.

### 1.    Degree of Success

Regarding defendant's first argument that the Court should reduce plaintiff's requested hours based on the limited success achieved, the Court finds no basis to do so. Plaintiff obtained a settlement, albeit on an individual basis, that was significant given the facts of the case and the statutory recovery maximums for an individual in the FCRA and FCCPA. *See* 15 U.S.C. § 1681n(a)(1)(A); Fla. Stat. § 559.77(2) (both capping actual damages at $1000.00 for individuals).

### 2.    Time Spent on Administrative or Clerical Tasks

With regard to time spent on administrative and clerical tasks, I find a reduction is appropriate after a review of the records submitted by plaintiff[3] and specific

---

[3] Plaintiff submitted several exhibits containing hours billed; however, it appears they overlap to some degree. As such, I rely on primarily on composite billing hours submitted

objections raised by defendant. For example, Ms. Erdelyi billed for making copies, scanning documents, downloading pleadings, converting documents to PDFs, and adding deadlines to a calendar. Doc. 32-3 at 17, 19, 22-23, 27. Ms. Larue billed for e-filing various documents, filing away papers, opening a new matter in the e-portal, telephone calls to the clerk, and reviewing the docket. *Id.* at 17-19, 21-22. While such matters are necessary for the case to proceed in an organized manner, they are not the type of expense that should be shifted to defendant. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

### 3.    Time Spent on Intra-Office Communications

Although "[t]here is nothing inherently unreasonable about a client having multiple attorneys," "[r]edundant hours must be excluded from the reasonable hours claimed by the fee applicant." *Barnes*, 168 F.3d at 432 (quoting *Norman*, 836 F.2d at 1302). However, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.* (quoting *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). The

---

by all three attorneys, docs. 32-1 at 27-39, 32-2 at 18-30, and 32-3 at 17-28. Based on the assertions in counsels' affidavits, *see* docs. 32-1 at 5, 32-2 at 8, and 32-3 at 6, it is my understanding these documents contain the same information.

fee applicant has the burden of showing the time spent by the attorneys reflects the distinct contribution of each lawyer to the case. *Id.*

After review of plaintiff's records and defendant's objections, I find a reduction is warranted on this basis, although not to the extent requested by defendant. The records contain multiple examples of redundant tasks and communications in which I find plaintiff did not satisfy his burden of establishing the distinct contribution of each attorney. For example, in November and December 2019, all three attorneys billed for drafting and reviewing the initial complaint, Doc. 32-3 at 17. On September 3 and 4 2020, Mr. Rothburd and Mr. Thoresen both billed for email communications with each other. *Id.* at 19. On September 24, 2020, Mr. Rothburd and Mr. Pycraft billed for email communications with co-counsel. *Id.* at 20. In late September 2020, Mr. Thoresen, Ms. Erdelyi, and Mr. Rothburd all billed for drafting, editing, and communicating about the case management report. *Id.* at 20. On September 30, 2020, Mr. Rothburd block-billed 2.3 hours for various tasks which consisted, in large part, of communicating back and forth with Mr. Thoresen. *Id.* at 21. On October 15, 2020, Mr. Thoresen and Mr. Pycraft both billed for a telephone conference that took place between the two of them. *Id.* On November 4, 2020, all three attorneys billed for email communications between each other. *Id.* at 22. On February 18, 2021, all three attorneys billed for various communications with each other, and it appears Mr. Thoresen and Mr. Pycraft billed for the same telephone conversation with each other. *Id.* at 23. On March 11, 2021, all three attorneys billed various amounts of time for

14

communications between each other. *Id.* at 24. Between April 8-9, 2021, all three attorneys again billed for various communications between each other. *Id.* at 25.

Aside from these examples, there are numerous hours billed for communications between plaintiff's counsel and their support staff, *see id.* at 17-28. Moreover, there is duplicative work being done by multiple timekeepers. For instance, in March 2021, all three attorneys and a paralegal billed just under 15 hours for drafting, editing, and communicating about the motion to compel. *Id.* at 24; *see* doc. 19. Based on the duplicative work and multiple communications between the three attorneys and their support staff, I find a reduction is warranted on this basis.

### 4.    Block-billing

Block-billing, or "lumping together multiple activities in a single entry with no indication how much time was spent on each task," makes judicial review unnecessarily difficult and may warrant a reduction in the requested hours. *Zachoul v. Fair Debt Collections and Outsourcing*, No. 8:09-CV-128-T-27MAP, 2010 WL 1730789, at *3 (M.D. Fla. Mar. 19, 2010), *report and recommendation adopted*, 2010 WL 1727459 (M.D. Fla. Apr. 27, 2010). In this case, there are examples of block-billing which make it difficult to determine what amount of time was spent on the various tasks. For example, there are instances where Mr. Rothburd billed various amounts of hours for several different tasks, some of which appear to be substantive, and others which consist of duplicative communications with co-counsel. Doc. 32-3 at 21, 23-28. Thus, I find a reduction is warranted based on this basis.

Given the issues identified above – time spent on clerical tasks, time spent on duplicative tasks and intraoffice communications, and block-billing – I find an across-the-board reduction of 35% adequately accounts for the hours which constituted duplicative work or communications between the timekeepers, clerical tasks, and block-billed hours.

## II.    Costs

In addition to attorneys' fees, plaintiff requests $462.50 in costs, doc. 32 at 4, to which defendant does not object, doc. 35 at 21. Plaintiff also requests additional expenses for his expert witness on the issue of attorney's fees, doc. 32 at 4. The FCRA, FCCPA, and Rule 54(d)(1) of the Federal Rules of Civil Procedure provide that the prevailing party is entitled to costs. *See* 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2); § 559.77(2), Fla. Stat.; Fed. R. Civ. P. 54(d)(1). As the prevailing party here, plaintiff is entitled to recover costs.

Section 1920 of Title 28, United States Code, enumerates costs that can be taxed to the losing party. They include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and interpreter services. 28 U.S.C. § 1920. The party seeking taxation bears the burden of proving entitlement to those costs. *Loranger*, 10 F.3d at 784.

16

Upon review, I find plaintiff's request for $462.50 to be reasonable. However, plaintiff also requests the expenses of its fee expert. Mr. Tanner. Doc. 32 at 4. Although plaintiff does not provide a specified amount, Mr. Tanner states he spent 23.7 hours on the matter at a rate of $550 per hour. Doc. 32-4 at 16. This would equal a total of $13,035.00. Although plaintiff generally cites *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1188-89 (11th Cir. 1983) for the proposition that the limitations of section 1920 do not apply when cost-shifting is authorized by statute, he provides no authority interpreting the FCRA or FCCPA in a way that supports recovery of his expert's fee as a cost in these circumstances. *See Amaro v. Specialized Loan Servicing, LLC,* No. 8:10-cv-1729-T-17TBM, 2011 WL 6181918, at *4 (M.D. Fla. Dec. 13, 2011) (declining to award recovery of plaintiff's expert fee as a cost in FDCPA case). Thus, I find plaintiff has failed to establish he is entitled to Mr. Tanner's fee. *See Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 463 (11th Cir. 1996) (per curiam) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987))). Section 1821(a)(1) applies only to witnesses who appear pursuant to any rule or court order of a court of the United States, 28 U.S.C. § 1821(a)(1), and does not apply here.

## Recommendation[4]

I respectfully recommend:

1.  Plaintiff's Motion for Award of Plaintiff's Attorney's Fees and Costs, doc. 32, be **granted in part.** Plaintiff's attorneys' fees are calculated as follows:

| Timekeeper | Rate | Requested Hours | Hours After 35% Reduction | Awarded Amount |
|---|---|---|---|---|
| Craig E. Rothburd | $350 | 60.6 | 39.39 | $13,786.50 |
| Adam Thoresen | $300 | 68.46 | 44.499 | $13,349.70 |
| Thomas Pycraft | $300 | 34.74 | 22.581 | $6,774.30 |
| Dylan Thatcher (law clerk) | $95 | 5.5 | 3.575 | $339.63 |
| Alexis Erdelyi (paralegal) | $100 | 30.35 | 19.7275 | $1972.75 |
| Michelle LaRue (paralegal) | $100 | 22.45 | 14.5925 | $1,459.25 |
| **TOTAL** | | | | **$37,682.13** |

---

[4] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

2.    the Clerk be **directed to enter judgment** against defendant and in favor of plaintiff for attorneys' fees in the amount of **$37,682.13** and costs of **$462.50**; and

3.    the Clerk be directed to **close** the file.

**Entered** in Jacksonville, Florida on January 24, 2022.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
Honorable Marcia Morales Howard, United States District Judge
Craig E. Rothburd, Esquire
Thomas R. Pycraft, Jr., Esquire
Adam Thoresen, Esquire
Joseph C. Proulx, Esquire
Dale Thomas Golden, Esquire